# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Retire Young, Inc. and Kevin Young, | Court File No. |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| Fiserv, Inc., d/b/a CardConnect, | |
| Defendant. | |

Plaintiffs Retire Young, Inc., d/b/a Online Trading Academy Minneapolis ("OTA Minneapolis") and Kevin Young, as and for their Complaint against Defendant Fiserv, Inc., doing business as CardConnect ("CardConnect"), states and alleges as follows:

## PARTIES, JURISDICTION, VENUE, AND NATURE OF THE ACTION

1. OTA Minneapolis is a Minnesota corporation with its principal place of business at 7900 International Drive, Suite 170, Bloomington, Minnesota 55425.

2. Kevin Young is an individual residing in Eden Prairie, Minnesota.

3. Fiserv, Inc., d/b/a CardConnect, is a Wisconsin corporation and, upon information and belief, does business at 255 Fiserv Drive, Brookfield, Wisconsin 53008-0979.

4. This Court has diversity jurisdiction over claims brought by Plaintiffs pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

5. This Court has personal jurisdiction over CardConnect. Defendant

CardConnect conducts business in Minnesota and the events underlying the claims in this lawsuit occurred in Minnesota; therefore, CardConnect has sufficient "minimum contacts" with Minnesota to provide this Court with personal jurisdiction.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), because OTA Minneapolis conducts business in Minnesota, Kevin Young resides in Hennepin County, and the acts and omissions giving rise to the claims herein allegedly took place in this district.

## FACTUAL BACKGROUND

7. OTA Minneapolis is a local Minnesota franchisee of the OTA Franchise Corporation, d/b/a Online Trading Academy ("Corporate OTA").

8. Corporate OTA and OTA Minneapolis are separate and distinct legal entities.

9. While both Corporate OTA and Minneapolis OTA are investment and financial education providers that teach students how to day trade securities as a side or primary job, they differ significant in their marketing. Corporate OTA uses earning claims in its marketing, and OTA Minneapolis does not.

10. Kevin Young is the sole shareholder of OTA Minneapolis.

11. Many of the students pay for their tuition and related expenses by credit card. As such, Plaintiffs maintain a merchant account to accept credit cards for payment.

12. On or about May 5, 2016, OTA Minneapolis (not Plaintiff Young) entered into a merchant agreement with Defendant CardConnect for credit card processing and related services (the "Agreement").

13. OTA Minneapolis processed its credit cards through CardConnect, without

any complaints of improper credit card processing or chargebacks.

14. Unexpectedly, and without prior warning or information, CardConnect discontinued its business relationship with OTA Minneapolis by letter dated April 27, 2020. A copy of the referenced letter is attached hereto as **Exhibit A**.

15. Upon receipt of the termination letter, OTA Minneapolis contacted CardConnect for an explanation and was first advised that CardConnect terminated the business relationship on the basis that OTA Minneapolis had excessive chargebacks.

16. OTA Minneapolis has no record of chargebacks, and CardConnect subsequently acknowledged that fact.

17. CardConnect then advised the business relationship was terminated on the basis of litigation that CardConnect believed to involve OTA Minneapolis, specifically *Federal Trade Commission v. OTA Franchise Corporation, et. al.*, 8:20-cv-00287-JVS ("FTC Lawsuit").

18. The FTC Litigation involved Corporate OTA and other defendants. OTA Minneapolis was neither a named defendant nor involved in this lawsuit.

19. The FTC Litigation involved Corporate OTA's use of earning claims in its marketing to potential students.

20. OTA Minneapolis was not a party to the FTC Litigation and was not bound to any requirement or duty stemming from the settlement of the FTC Litigation. OTA Minneapolis never used the earning claims that were the subject of the FTC Lawsuit.

### MATCH List

21. Mastercard, Inc. maintains a system called the Mastercard Alert to Control

High-risk (Merchants) ("MATCH").

22. The MATCH system was designed to provide credit card processors, such Defendant CardConnect, with the opportunity to develop and review enhanced or incremental risk information before entering in to a merchant agreement.

23. The MATCH system includes a database that contains information about certain merchants and owners in which a card processor has terminated a merchant agreement.

24. When a credit card processor considers signing an agreement with a merchant, the processor may check the MATCH list to learn whether the merchant was terminated by another credit card processor due to circumstances that could create a high risk for future processors.

25. Being listed on the MATCH List often dissuades credit card processors from entering into an agreement with a merchant to provide credit card processing services; if card processors do provide such services to merchants on the MATCH List, they greatly increase the fees charged for the services due to a perceived higher risk.

26. After terminating its merchant agreement with OTA Minneapolis, CardConnect placed the OTA Minneapolis and Kevin Young, individually, on the MATCH List.

27. Young and OTA Minneapolis was the only owner and franchisee of a Corporate OTA that was reported to the MATCH List, despite there being approximately forty (40) franchises across the country.

28. CardConnect placed Young and OTA Minneapolis on the MATCH List,

because it claimed OTA Minneapolis used the same earnings claims in marketing investment opportunities or training that Corporate OTA used and was the subject of the FTC Litigation.

29. CardConnect wrongfully placed Young and OTA Minneapolis on the MATCH List. OTA Minneapolis never made earnings claims in its marketing or trainings that was the subject of the FTC Litigation.

30. As a result of CardConnect's wrongful action to place OTA Minneapolis and Young on the MATCH List, OTA Minneapolis was not able to get market rate credit card processing fees from credit card processors, increasing its cost to accept credit cards as payment.

31. OTA Minneapolis was forced to obtain replacement credit card processing services with another vendor at an above market processing rate. Specifically, OTA Minneapolis paid CardConnect a processing fee of 2.1% on its transactions, but it now pays a replacement vendor a processing fee of 3.5%, plus $0.15 per transaction.

32. OTA Minneapolis did not default on the terms and conditions of the written merchant agreement with CardConnect nor OTA Minneapolis any of the marketing earnings claims subject of the FTC Litigation; therefore, there was, and remains, no basis for placing either the OTA Minneapolis or Young on the MATCH List.

33. Under Section 11.4 of MasterCard's Security Rules and Procedures for Merchants ("Section 11.4"), a credit card processor, such as Defendant CardConnect, can remove a party from the MATCH List if the party who placed them on the MATCH List contacts MasterCard to inform them that the party was placed on the MATCH List in error.

A copy of the referenced section is attached hereto as **Exhibit B**.

34. CardConnect has not notified Mastercard, Inc. of its error in placing OTA Minneapolis and Young on the MATCH List.

## COUNT I
### Defamation as to Both Plaintiffs

35. Plaintiffs restate and re-allege the allegations set forth above as though further set forth and alleged herein.

36. "To establish a claim for defamation, the plaintiff must establish each of the following elements: (1) a false statement; (2) communication of the false statement to someone other than the plaintiff; and (3) a showing that the false statement would tend to harm the plaintiff's reputation or lower his esteem in the community." *Hern v. Bankers Life Cas. Co.*, 133 F. Supp. 2d 1130, 1136 (D. Minn. 2001).

37. CardConnect reported OTA Minneapolis and Young for alleged reasons stemming from the FTC Litigation, despite not being parties or involved in any way with the matter. Young and OTA Minneapolis were the only franchisee reported to the MATCH list.

38. Neither Young nor OTA Minneapolis used the earnings claims in marketing or investment training that was as the heart of the FTC Litigation.

39. CardConnect has been aware that this information is false.

40. Banks or credit card processors checking the MATCH List see Young and OTA Minneapolis listed on the list.

41. Being on the MATCH List has hurt Young and OTA Minneapolis's

reputations, because they are characterized as being a high risk merchant.

42. As a result of CardConnect's wrongful action to place OTA Minneapolis and Young on the MATCH List, OTA Minneapolis was not able to get market rate credit card processing fees from credit card processors, increasing its cost to accept credit cards as payment.

43. Specifically, OTA Minneapolis paid CardConnect a processing fee of 2.1% on its transactions, but OTA Minneapolis must now pay the replacement vendor a processing fee of 3.5%, plus $0.15 per transaction.

44. Young and OTA Minneapolis have been damaged in excess of $75,000.00, with the exact amount to be determined at trial.

## COUNT III
### Violation of Minnesota Deceptive Trade Practices Act ("MDTPA")
### Minn. Stat. § 325D.44

45. Plaintiffs restate and re-allege the allegations set forth above as though further set forth and alleged herein.

46. The MDPTA permits an injured party to enjoin the disparagement of its "goods, services or business by false or misleading statements of fact." Minn. Stat. § 325D.44, subd. 1(8).

47. Reporting OTA Minneapolis and Young to the MATCH List by claiming OTA Minneapolis used the same earning claims in its marketing of investment opportunities and trainings as subject in the FTC Litigation, while knowing this information to be false, CardConnect disparaged the services and business of OTA Minneapolis with false and misleading statements in violation of Minn. Stat.

§ 325D.44 subd. 1(8)

48. Pursuant to Minn. Stat. § 325D.45, Plaintiffs are entitled to an order enjoining CardConnect from making false and misleading statements regarding OTA Minneapolis's services and business and require it to report that it reported Kevin Young and OTA Minneapolis to the MATCH List in error.

49. Plaintiffs also seeks an award of reasonable attorneys' fees as allowed under Minn. Stat. 325D.45.

## COUNT II
## Declaratory Judgment

50. Plaintiffs restate and re-allege the allegations set forth above as though further set forth and alleged herein.

51. Plaintiffs bring this declaratory judgment action, because CardConnect reported Plaintiffs to the MATCH List in error.

52. This affirmative act by CardConnect creates an immediate, real, and justiciable case or controversy between Plaintiffs and CardConnect.

53. Accordingly, Plaintiffs request a declaration, ordering CardConnect to notify Mastercard, in accordance with the procedures in Mastarcard's Security Rules and Procedures, that it reported OTA Minneapolis and Kevin Young to the MATCH List in error.

54. Plaintiffs request a declaration, ordering CardConnect to take action to remove OTA Minneapolis and Kevin Young from the MATCH List due to their original reporting being in error.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

1. An Order declaring that Defendant Fiserv, Inc. mistakenly reported OTA Minneapolis and Kevin Young to the MATCH List;

2. An Order declaring that Defendant must report to Mastercard, Inc. that OTA Minneapolis and Kevin Young were placed on the MATCH List in error per Section 11.4 and should be removed;

3. An Order awarding Plaintiffs' damages in excess of $75,000, with the exact amount to be determined at trial;

4. An award of attorneys' fees and costs; and

5. For such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  May 14, 2021                                  **HELLMUTH & JOHNSON**

*/s/ Carol R. Moss*
Carol R. Moss, #0389202
Katherine A. Herman, #0400831
8050 West 78th Street
Edina, Minnesota  55439
Telephone:  (952) 941-4005
Facsimile:  (952) 941-2337
E-Mail: cmoss@hjlawfirm.com
E-Mail: kherman@hjlawfirm.com
**ATTORNEYS FOR PLAINTIFFS**